# R. W. McCormick & Son, Appellants, *v.* Royal Insurance Co.

*Practice—Special verdict—Essentials of.*

A special verdict is where the jury find the facts, leaving the ultimate
decision of the cause, upon those facts, to the court, concluding condition-
ally, " that if, upon the whole matter thus found, the court should be of
opinion that the plaintiff has a good cause of action, they then find for
the plaintiff and assess his damages; if otherwise, they then find for the
defendant."

It is essential to a special verdict that it contain all the facts upon
which the judgment of the court is to rest. Nothing is to be taken by
implication or intendment. Like a case stated, whatever is not found in
it, is presumed not to exist.

In an action upon a fire insurance policy to recover the value of lumber
destroyed by fire, a special verdict is defective which fails to find that any
lumber was destroyed by the fire mentioned in the verdict, and which
fails to set forth the policy, although setting forth certain findings which
are claimed to establish a breach of the " space clause " in the policy.

*Fire insurance—Estoppel—Waiver—Evidence.*

In an action upon a fire insurance policy to recover the value of lumber,
where it appears that the company has refused to pay on the sole ground
that the property was not owned by plaintiff, and so informed plaintiff and
invited him to sue, the company cannot set up as a defence an alleged
breach of the " space clause " in the policy.

Refusal of an insurance company to pay a loss on a specified ground
estops it from asserting other ground relieving it from liability of which
it had full knowledge, where the insured has incurred expense and
brought suit in the belief that the only objection was that stated.

Argued April 17, 1893.  Reargued April 20, 1894.  Appeal, No. 19, July T., 1891, by plaintiffs, from judgment of C. P. Clearfield Co., Sept. T., 1891, No. 402, on special verdict.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ., on reargument.  Reversed.

Assumpsit on fire insurance policy.  Before KREBS, P. J.

When A. S. Grow, a witness for plaintiffs, was on the stand, plaintiffs proposed to prove by him that at the time the policy of insurance in evidence was written, Mr. Grow, who was soliciting agent for defendant, procured the distance of 300 feet placed in the space clause, from a draft given him by W. H. Stevenson, a considerable time before, showing the distance from the mill to the lumber piles to be over 300 feet, said draft having been prepared and furnished witness with a view of placing insurance for Stevenson on the mill, and that plaintiffs did not know anything as to said distance, nor did they or either of them in any way furnish to witness any evidence as to what said distance really was, but witness put the same there of his own motion.  And further that when the adjuster, Mr. Taylor, came to Lock Haven to adjust said loss and after he had looked the matter of the loss over, said to plaintiffs that there was no objection so far as the space clause was concerned, which conversation occurred in the latter part of May or beginning of June, 1891, and before the correspondence in evidence took place.

Defendant objects to the offer: (1) Because it is incompetent and irrelevant.  (2) Because the space clause in question is in form and effect a warranty and cannot be contradicted or varied or destroyed in the manner here proposed.  Objection sustained, evidence excluded and bill sealed. [2]

Plaintiffs then proposed to show that when Mr. Taylor, adjuster of defendant company, came to Lock Haven, in the latter part of May, or beginning of June, 1891, after looking into the matter of the loss in this case, he then said to plaintiffs that there was no objection to plaintiffs' claim, so far as the space clause was concerned, and that afterwards, the company, knowing the facts in regard to the space clause and the objections that might be made on account of the same, as to the policy being thereby made void, afterwards, by their correspondence,

failed to set up any defence on account of the space clause, but put their defence on the alleged ground that plaintiffs had no lumber on the ground at the time of the fire. This for the purpose of showing that defendant company by its conduct, after full knowledge of the facts, waived their defence on the ground of the space clause, or at least is estopped from setting up such defence, and as rebuttal to the defence set up on account of the space clause.

Objected to by defendant: (1) Because the testimony is irrelevant and incompetent. (2) Because the declaration alleged as made by the adjuster would be insufficient to contradict the terms of, or waive the binding effect of the express warranty to which it relates. (3) Because the offer is not proper rebuttal. (4) Because the alleged statement by the adjuster was after the fire and after the rights of the parties were fixed, and wholly insufficient to relieve plaintiffs from the effect of the express warranty.

The Court: Being of the opinion that the offer proven would not constitute a waiver of the right to set up as a defence the breach of the "space clause" nor an equitable estoppel against the company, we sustain the objection and seal a bill for plaintiffs. [3]

The jury returned the following special verdict:

" We find the following facts, viz:

" That R. W. McCormick & Son did purchase from W. H. Stevenson lumber as set out in the written contract, dated Sept. 8, 1890, and in written contract dated May 3, 1891, and that the same was marked on the edge of the boards as the same was piled in the yard at the mill of said Stevenson with pencil marks, and that Clayton Pepperman, as agent of said McCormick & Son, went to the yard where same was piled, and shipped two car loads from said marked piles, about the 23d of April, 1891.

" That there was in the yard at the sawmill on the day of the fire the value of the lumber bought by the plaintiff, as aforesaid, $1,165, and $135 in excess of insurance sought to be recovered in the case.

" That the lumber in the yard was not piled 300 feet from the mill, and that in the space between the mill and the lumber piles and along the tramway there were pieces of rotten

and broken boards, slabs, edging and plastering lath, in some places were about nine feet high, but that there were no lumber piled within said space as in the yard beyond.

" That the fire occurred on May 19, 1891, caused by a general forest conflagration unconnected with the operations of the mill, and that the mill had been shut down for about seven days before May 19, 1891.

" If under these facts the court be of the opinion that the plaintiff is entitled to recover, then we find in favor of the plaintiff in the sum of $1,030, and judgment be entered for that amount. But if under these facts the court be of the opinion that the plaintiff is not entitled to recover, then judgment to be entered for the defendant notwithstanding the verdict."

The court entered judgment for defendant.

*Errors assigned* were (1) entry of judgment; (2, 3) rulings on evidence, quoting bills of exceptions.

*C. S. McCormick, J. B. McEnally* with him, for appellants.— The special verdict was defective : Kinsley v. Coyle, 58 Pa. 463 ; Wallingford v. Dunlap, 14 Pa. 31 ; Loew v. Stocker, 61 Pa. 347 ; Crousillat v. Ball, 3 Yeates, 375 ; Tuigg v. Tracy, 104 Pa. 498 ; R. R. v. Evans, 53 Pa. 253 ; Whitesides v. Russel, 8 W. & S. 44 ; Holmes v. Wallace, 46 Pa. 266.

Parol evidence is competent to show a waiver of a breach of a condition or warranty in a policy of insurance, either on the ground of knowledge of the fact in the agent at the time of issuing the policy, or of such subsequent conduct on the part of the insurer or its agents as subjects the insured to expense, inconvenience, annoyance or trouble, and leads him to believe that the breach is waived : Wood's Fire Ins., par. 88 ; Ins. Co. v. Wilkinson, 13 Wal. 222 ; Plumb v. Ins. Co., 18 N. Y. 392 ; Ins. Co. v. Olmstead, 21 Mich. 246 ; Michigan Shingle Co. v. Ins. Co., 53 N. W. Rep. 945 ; Mut. Protection Co. v. Schell, 29 Pa. 31 ; Ins. Co. v. Cooper, 50 Pa. 331 ; Ins. Co. v. Spencer, 53 Pa. 353 ; Eilenberger v. Ins. Co., 89 Pa. 464 ; McFarland v. Ins. Co., 134 Pa. 590 ; Snowden v. Ins. Co., 122 Pa. 502 ; Kister v. Ins. Co., 128 Pa. 565 ; Ins. Co. v. Bruner, 23 Pa. 50 ; Ins. Co. v. Erb, 112 Pa. 149 ; Bonnert v. Ins. Co., 129

Pa. 562; Ben Franklin Ins. Co. v. Ins. Co., 46 Pa. 138; Ins. Co. v. Dougherty, 102 Pa. 571; Gould v. Ins. Co., 134 Pa. 570.

Refusal of an insurance company to pay a loss on a special ground estops it from asserting other ground relieving it from liability of which it had full knowledge, where the insured has incurred expense and brought suit in the belief that the only objection was that stated: Towle v. Ins. Co., Mich. 51 N. W. R. 987; Roe v. Ins. Co., 23 Atl. R. 718; Weiss v. Ins. Co., 23 Atl. R. 991: Coursin v. Ins. Co., 46 Pa. 323; Ins. Co. v. Cochran, 88 Pa. 233; Snowden v. Ins. Co., 122 Pa. 502; Ins. Co. v. Dougherty, 102 Pa. 571; Welch v. Assurance Co., 24 Atl. R. 115; W. & A. Pipe Lines v. Ins. Co., 145 Pa. 361.

*Thos. H. Murray, Cyrus Gordon* with him, for appellee.— All the disputed facts before the jury were specifically found by them, and set forth in the verdict.

The verdict is entirely sufficient as it stands, and not even defective in form. It need not embody a copy of the policy but may refer to the record: Crousillat v. Ball, 3 Yeates, 375; Klopp v. Ins. Co., 1 Woodw. Dec. 445.

In any event, the statement of undisputed facts is matter of form, and not of substance, and is amendable: Fenn, Lessee, v. Blanchard, 2 Yeates, 543; Wallington v. Dunlap, 14 Pa. 33; Loew v. Stocker, 61 Pa. 352; Steph. Pl. 113; 1 Arch. Pr. 189; 3 Bl. Com. 377; 2 Bouv. L. Dict. 635; Morse v. Chase & Co., 4 Watts, 456; 1 T. & H. Pr. 584; Porter v. Rummery, 10 Mass. 64: Com. v. Stebbins, 74 Mass. 496; Iven's Ap., 33 Pa. 237; Keen v. Hopkins, 48 Pa. 445; Cohn v. Scheuer, 115 Pa. 178; Clouser v. Patterson, 122 Pa. 376; Thompson v. Mattern, 115 Pa. 501; Acts of March 14, 1872, P. L. 25; May 20, 1891, P. L. 101; Terry v. Wenderoth, 147 Pa. 519.

The verdict manifestly shows a violation of the space clause, both with respect to the distance of the lumber piles from the mill, and with respect to the occupation of the intervening space by lumber and pieces of lumber.

As no exception was taken to the verdict in the court below, it is not the subject of an assignment of error: Rank v. Rank, 5 Pa. 211; Wright v. Wood, 23 Pa. 120; Blake v. Metzgar, 131 Pa. 299.

The proofs of loss were dispensed with and the arbitration

clause was expressly waived, but there was no other waiver, express or implied, nor was the evidence sufficient to create an estoppel: Ins. Co. v. Brown, 128 Pa. 386; Welsh v. Ins. Co., 151 Pa. 618.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 12, 1894:

The first specification in substance challenged the sufficiency of the special verdict and alleges error in entering judgment thereon.

In Wallingford v. Dunlap, 14 Pa. 31, it is said: " A special verdict is when the jury find the facts, leaving the ultimate decision of the cause, upon those facts, to the court, concluding conditionally that if, upon the whole matter thus found, the court should be of opinion that the plaintiff has a good cause of action, they then find for the plaintiff and assess his damages; if otherwise, they then find for the defendant." Nothing is better settled, on principle as well as authority, than that all the facts upon which the court is to pronounce judgment should be incorporated in the special verdict. It is the exclusive province of the jury, in the first place, to determine all disputed questions of fact, from the evidence before them; and then their special verdict is made up of those findings of fact, together with such undisputed facts as may be necessary to a just decision of the cause. If important undisputed facts are omitted by mistake from the special verdict, or are incorrectly recited therein, the court may, upon full proof thereof, so amend or mould the verdict as to make it conform to the undisputed facts. This should be done when the verdict is rendered or as soon as practicable thereafter. The court, in considering a special verdict and entering judgment thereon, is necessarily confined to the facts found and embodied in the verdict; the latter cannot be aided by intendment or extrinsic facts that may appear in the evidence. It is an inflexible rule that in a special verdict no inferences whatsoever, as to matters of fact, but only inferences of law and of legal construction are allowable: 4 Minor's Inst. 752; Wallington v. Dunlap, supra, and cases there cited: Loew v. Stocker, 61 Pa. 347; Vansyckel v. Stewart, 77 Pa. 125; Tuigg v. Tracey, 104 Pa. 493; Railway v. Evans, 53 Pa. 250. According to all the authorities, it is essential to a special verdict that it con-

tain all the facts upon which the judgment of the court is to rest. Nothing is to be taken by implication or intendment. Like a case stated, whatever is not found in it is presumed not to exist.

Tested by these requirements, we think the special verdict in this case is defective.

The first clause substantially finds that plaintiffs purchased and owned the lumber in question, and that it was properly marked, etc., as claimed by them.

The second finds that of the lumber, so owned by plaintiffs, there was in the yard, on the day of the fire, a quantity greater in value than the "insurance sought to be recovered in this case."

The third finds: "That the lumber in the yard was not piled 300 feet from the mill, and that in the space between the mill and the lumber piles and along the tramway, there were pieces of rotten and broken boards, slabs, edging and plastering lath, in some places were about 9 feet high, but that there was no lumber piled within said space as in the yard beyond."

The fourth and last clause finds that the fire of May 19, 1891, was caused by a general forest conflagration, unconnected with the operation of the mill, and that the mill had been shut down about seven days before.

While these findings of fact, except those contained in the third clause, may be regarded as distinct and sufficiently specific, it will be observed that the special verdict is silent as to terms and conditions of the policy given in evidence. There is no finding that any lumber was destroyed by fire on May 19, 1891, or at any other time. These and other facts, obviously necessary to a just decision of the case, are left to conjecture, or must be sought for in the evidence. That, of course, is contrary to every correct precedent and cannot be sanctioned. Again, assuming, for the sake of argument, that the findings in the third clause are sufficiently distinct and certain, and that they relate to a condition of things existing at a time and place material to the matter in controversy, there is nothing in the special verdict to which they are applicable. It is claimed that these findings establish a breach of the "space clause" in the policy; but how can we know that without going outside of the special verdict and resorting to the evidence to ascertain

what the alleged "space clause" is? Without further comment on this branch of the case, we are of opinion that, according to the authorities above cited, the special verdict is essentially defective and should be set aside.

The subjects of complaint in the two remaining specifications are the offers of testimony recited therein respectively.

It is claimed that this testimony, in connection with other evidence in the case, would have shown that defendant company relinquished any right it may have had under the "space clause" in its policy, and by its conduct estopped itself from interposing said clause as a defence to plaintiffs' claim, and hence it should have been received for that purpose and submitted to the jury for their consideration. For present purposes, it must be assumed that plaintiffs could and would have proved all the facts and circumstances suggested in these offers; and, therefore, in considering their relevancy and effect, said facts, etc., may be regarded as proved.

It was conclusively shown that on May 19, 1891, during the life of the policy, an unprecedented forest fire swept over the premises where the lumber insured was piled, and destroyed mill, lumber and everything of a combustible nature in its path. Defendant having been duly notified of the total loss, immediately sent its adjuster, Mr. Taylor, to the premises for the purpose of inquiring into the circumstances of the fire and adjusting the loss. After making such examination as was deemed proper, and with a full knowledge of all the circumstances attending the loss, etc., he informed plaintiffs that there would be no objection to payment, so far as the "space clause" was concerned. The only objection he suggested was that plaintiffs had little if any lumber in the yard at time the fire occurred. As clearly shown by subsequent correspondence, the company, with full knowledge of all the facts, took the same position, and finally refused to pay on the sole ground that the lumber covered by the policy did not belong to plaintiffs. Under date of July 3, 1891, its general agent at Philadelphia wrote plaintiffs' attorney thus: "I note what you say as to the general agreement, as to the law of the case, between yourself and. . . . our counsel, but with respect to the fact, it does not appear at all probable that we can come to a better understanding, as I have made a thorough investigation into

the matter, and believe that I can prove beyond all question that there was not a foot of lumber at the time of the sale in the yard of Stevenson's marked as the property of McCormick & Son."

A few days thereafter plaintiffs' attorney again wrote, inclosing notice of appointment of referee, etc., and said: "I learn that no formal proof of loss, as required by the policy, was made. The reason it was not done was, that your adjuster, Mr. Taylor, said to Mr. R. W. McCormick that no formal or other proof than he had was necessary. I don't want any technical question about this formality to arise, to trouble us hereafter, and if you are not satisfied with what your adjuster has done in this regard, I desire that you say so now, so that we may put ourselves in proper shape."

To this, the general agent replied, under date of July 9, 1891, and said: " Having given a full examination into the subject of this fire-loss claim, and being satisfied that there was no property on the premises insured under policy No. 3,923,669 belonging to your clients, I see no occasion for arbitration, and decline to enter into one in behalf of the Royal Insurance Co. You are therefore at liberty to bring suit at once, any right of exemption from suit under the 14th clause of the Royal policy being waived."

It is impossible to consider what was said and done by the parties, the company's adjuster, its general agent, and its counsel, from the beginning until suit was brought, without being forced to the conclusion that the adjuster, acting for the company, relinquished any right it may have had under the " space clause ; " that, with full knowledge of all the facts, the adjuster's action in that regard was fully approved and ratified by the company, and that, by mutual understanding of both parties, the only matter in controversy between them was the ownership of the lumber in question. With that mutual understanding, plaintiffs were virtually invited to bring suit for the purpose of determining that fact and nothing else. In view of the testimony it would be idle to suggest that the effect of the " space clause " was overlooked by the company until after suit was brought. Such a thing is simply impossible, or at best extremely improbable; but, if it were otherwise, every principle of good faith and fair dealing required the company

to notify plaintiffs, when they were invited to bring suit to settle the question of ownership, that the space clause would be made a ground of defence. If such notice had been given, non constat that they would have risked the outlay of employing counsel, and the expenses of conducting a useless lawsuit. If, by its willful conduct, the company led the plaintiffs on and induced them to incur expenses for the purpose of establishing their ownership of the lumber, in the belief that there was no other question in the case, justice and equity both forbid that in such circumstances the company should be permitted to impale them on the " space clause." If such a thing can be done, it would be difficult to conceive of a plainer case of bad faith, by which a party is induced to change his position for the worse and involve himself in useless trouble and expense. In view of its legitimate bearing, and tendency to prove such facts as ought to constitute a waiver of the space clause and estoppel, we think the proposed testimony was relevant. In connection with other evidence in the cause, it presents questions of fact which are proper for the consideration of the jury.

In Brink et al. v. Ins. Co., 80 N. Y. 108, 113, the defendant company, after considering the claim of the insured, decided not to pay the loss, upon the ground of fraud, and so informed them. Thereupon suit was brought and, at the trial, the company sought to interpose the additional defence that the proofs of loss were not filed in time. Mr. Chief Justice CHURCH, speaking for the court of appeals, said : "I think it was estopped from so doing. The plaintiffs' claim was challenged for fraud and that only. They acted upon it and brought an action, incurring large expense in its prosecution. Non constat, if the failure to file the proofs in time had been insisted on, but that the plaintiffs would have acquiesced in it and refrained from prosecuting, and thus they might be injured by the change of ground on the part of the defendant. Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness. They may refuse to pay, without specifying any ground, and insist upon any available ground, but when they plant themselves upon a specific defence, and so notify the assured, they should not be permitted to retract after the latter

has acted upon their position as announced, and incurred expenses in consequence of it."

"Refusal of an insurance company to pay a loss on a specified ground estops it from asserting other ground relieving it from liability of which it had full knowledge, where the assured has incurred expense and brought suit in the belief that the only objection was that stated:" Towle v. Iona Fire Insurance Co., 51 N. W. Rep. 987.

A similar principle was recognized and applied in Bonnert v. Ins. Co., 129 Pa. 558, to prevent the defendant from successfully asserting a breach of condition requiring suit to be brought within six months after loss.   Mr. Chief Justice PAXSON in that case said: "When an insurance company attempts to defeat a recovery upon a condition that was intended solely for its own benefit, and which deprives the assured, however honest his claim may be, of the indemnity which he paid for, it is not too much to hold the company to entire good faith.   The breach of the condition must be promptly taken advantage of.   Nothing else must be alleged as a reason for non-payment, and especially must not the assured be led astray by proposing settlement on grounds other than the alleged breach of the condition."

The principles, which we think are applicable to that branch of the defence grounded on the "space clause" in the policy, are also recognized in the following cases: Stayton v. Graham, 139 Pa. 1; Pipe Lines v. Ins. Co., 145 Pa. 361; Castner v. Ins. Co., 50 Mich. 273; Vos v. Robinson, 9 Johns. 192; Ins Co. v. Miller, 120 Pa. 517; McFarland v. Ins. Co., 134 Pa. 590; Michigan Shingle Co. v. Ins. Co., 53 N. W. R. 945; Same v. Same, 94 Mich. 389.

For reasons above suggested, the assignments of error are sustained, judgment reversed and a venire facias de novo awarded.

MR. JUSTICE MITCHELL dissented from so much of this opinion as implies that there was any sufficient evidence of waiver.